

1 | Larry M. Golub (110545), lgolub@barwol.com
2 | Vivian I. Orlando (213833), vorlando@barwol.com
BARGER & WOLEN LLP
3 | 633 West Fifth Street, 47th Floor
Los Angeles, California 90071
Telephone: (213) 680-2800
4 | Facsimile: (213) 614-7399

5

**FILED**

MAY 3 0 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___E CL___ DEPUTY

6 | Attorneys for Plaintiff
Steadfast Insurance Company

7

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | STEADFAST INSURANCE COMPANY, a )    CASE NO.: '08 CV 0959 JAH LSP
Delaware corporation,                )
12 |                                   )    **COMPLAINT FOR:**
            Plaintiff,                )
13 |                                   )    **(1) BREACH OF CONTRACT;**
        vs.                           )    **(2) ACCOUNT STATED; AND**
14 |                                   )    **(3) MONEY HAD AND RECEIVED**
SOUTHWESTERN EQUIPMENT, LLC, a )
15 | California limited liability company,  )
                                      )
16 |            Defendant.             )
                                      )
17 |_____)

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-EIGHTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

i:\office9\9985\054\08pleadings\complaint.doc

1    COMES NOW Plaintiff Steadfast Insurance Company ("Steadfast"), as and for its

2    Complaint against Defendant Southwestern Equipment, LLC ("Southwestern"), states and alleges

3    as follows:

4

5                    **JURISDICTION & VENUE**

6        1.    **Jurisdiction.**  This Court has jurisdiction over this action pursuant 28 U.S.C.

7    §1332(a) in that the parties to this action are citizens of different states and the amount in

8    controversy, exclusive of interest and costs, exceeds $75,000.

9

10       2.    **Venue.**  Venue is proper in the Southern District of California pursuant to 28 U.S.C.

11   § 1391(a)(1), in that Defendant Southwestern is a resident of this judicial district.  Steadfast is

12   informed and believes and thereon alleges that Southwestern has its principal place of business in

13   this judicial district.

14

15                        **PARTIES**

16       3.    Plaintiff Steadfast is a corporation organized and existing under the laws of the State

17   of Delaware, with its principal place of business in Schaumburg, Illinois, and doing business in

18   California as a surplus lines insurer.

19

20       4.    Steadfast is informed and believes and thereon alleges that Defendant Southwestern

21   is a limited liability company, organized and existing under the laws of the State of California, with

22   its principal place of business in La Mesa, San Diego County, California.

23

24                  **COMMON ALLEGATIONS**

25       5.    Steadfast issued a commercial general liability insurance policy to Southwestern

26   Policy No. SCO 3963957-01 (a true and correct copy of which is attached as Exhibit "A"), for the

27   period May 13, 2003 to May 13, 2004 (the "Policy").  Pursuant to the terms of the Policy,

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

Southwestern was required to make an additional audited premium adjustment payment computed at the end of the period that such Policy was in effect.

6.    The Schedule of Operations, Endorsement No. 3 to the Policy, sets forth the general calculation of premium for the Policy.  Endorsement No. 3 specifically provides that for the period of May 13, 2003 to May 13, 2004, the Policy premium is based on payroll at a rate of $19.05 per $100 of payroll for grading of land.  In connection with the issuance of the Policy, Southwestern promised to pay a minimum deposit premium of $341,663 based on the anticipated payroll of $1,775,000 for the May 13, 2003 to May 13, 2004 policy period, which minimum deposit premium Southwestern paid.  Southwestern further agreed that Steadfast would be entitled to audit the payroll and operations of Southwestern following the end of the policy period to calculate the actual payroll during the policy period, and Southwestern would pay any increase in premium based on the actual payroll above the estimated payroll.

7.    In addition, pursuant to the Subcontractors Maintenance of Liability Limits Endorsement, Endorsement No. 8 of the Policy, Southwestern agreed that it would only use subcontractors who maintained general liability coverage with insurers that possessed at least an "A" rating from A.M. Best's Insurance, and that, if such a rating was not maintained by any of the subcontractors' insurers used by Southwestern, the rates attributed to those subcontractors would be higher as set forth in Endorsement No. 8 of the Policy.  That endorsement provides:

> **"THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**
>
> This endorsement modifies the insurance provided under the:
> **Commercial General Liability Coverage Part**
>
> **SCHEDULE**
>
> **Designated Subcontractors:**
> The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy shall control the application of insurance to which this endorsement applies.
>
> 1.  You will require that all subcontractors shown in the Schedule of Designated Subcontractors, while performing operations for you during the period of their contract with you will:

    a.  Maintain Commercial General Liability insurance coverage provided
by:

            an insurance company with an "A" Best rating or better. . . .

    b.  Provide minimum limits as respects Coverage A. Bodily injury or
Property damage of $1,000,000 Each Occurrence, $1,000,000
General Aggregate, $1,000,000 Products Completed Operations
Aggregate; . . .

    c.  Have you added to their policies as an Additional Insured in
accordance with a. and b. above;

    d.  Provide you with Certificates of Insurance showing the coverage
requirements indicated in a., b., and c. above.

2.  Your failure to comply with the conditions above will not alter the coverage
provided by this policy. However, should you fail to comply, we will
consider such independent subcontractors to be your employees for the
purpose of computing rate and premium and such premiums will be
charged at the rate of:

            $28.57 per $100 of contract cost

3.  Commercial General Liability insurance maintained by your
subcontractors, within which you are an Additional Insured, will be
considered primary insurance and our policy will be considered in excess of
the limits of insurance of that subcontractor's primary coverage,
notwithstanding any contrary language that may exist in any Other
Insurance condition of the policy.

4.  All other terms and conditions of the policy not affected by this
endorsement remain the same."

8.    Following the end of the Policy term, Steadfast conducted its audit and determined
that Southwestern owed an additional $734,628 in premium, along with $22,038.84 in surplus lines
taxes and $918.29 in stamping fees. Steadfast sent Southwestern, through Southwestern's broker,
the billing for the premium audit amount.

9.    Southwestern has paid certain portions of the additional audit amount, but it has
refused to pay $312,192.88 of the final audit amount. A true and correct copy of the most recent
billing for the audit premium is attached hereto as Exhibit "B." Steadfast is informed and believes
and thereon alleges that Southwestern primarily disputes its obligation pursuant to Endorsement No.
8 to pay the remaining $312,192.88 that resulted from its use of subcontractors who maintained

1   general liability coverage with insurers that possessed less than an "A" rating from A.M. Best's

2   Insurance. However, on August 12, 2003, after the transmission of the Policy to Southwestern, its

3   Controller signed off on Endorsement No. 8, and a copy of the executed endorsement was

4   forwarded to Steadfast by Southwestern's broker. A true and correct copy of such executed

5   Endorsement No. 8 is attached hereto as Exhibit "C."

6

7        10.   As alleged above, the amount currently due Steadfast from Southwestern is

8   $312,192.88, plus interest thereon. Further, where Southwestern has requested documentation to

9   support Steadfast's statement of the amount owing, Steadfast has always provided such

10  documentation.

11

12       11.   Steadfast has, on numerous occasions, demanded payment for the amount due and

13  owing, but Southwestern has not made payment of the amount.

14

15                        **FIRST CAUSE OF ACTION**

16                        **(BREACH OF CONTRACT)**

17       12.   Steadfast incorporates by reference and realleges paragraphs 1 through 11.

18

19       13.   Steadfast has performed all of its obligations under the Policy, except those that may

20  have been excused due to the conduct and actions of Southwestern.

21

22       14.   Pursuant to the terms of the Policy in effect from May 13, 2003 to May 13, 2004,

23  and the premium audit invoice issued after the end of the Policy, Southwestern agreed to pay

24  Steadfast a final audit premium totaling $1,076,291 along with $22,038.84 in surplus lines taxes and

25  $918.29 in stamping fees. Southwestern has breached this contract in that it has not paid in full the

26  final audit premium, and has failed to pay Steadfast the remaining $312,192.88 of the amount due.

27  Accordingly, Southwestern owes Steadfast damages in the amount of $312,192.88, together with

28  interest thereon.

## SECOND CAUSE OF ACTION

### (ACCOUNT STATED)

15.   Steadfast incorporates by reference and realleges paragraphs 1 through 11.

16.   An account was stated by and between Steadfast and Southwestern, wherein it was agreed that said Southwestern was indebted to Steadfast in sum of $1,076,291 along with $22,038.84 in surplus lines taxes and $918.29 in stamping fees, together with interest thereon.

17.   As concerns the indebtedness set forth in the prior paragraph, $312,192.88 of said sum remains unpaid, although demand therefor has been made and there is now due, owing and unpaid from Southwestern to Steadfast said amount together with interest thereon.

## THIRD CAUSE OF ACTION

### (MONEY HAD AND RECEIVED)

18.   Steadfast incorporates by reference and realleges paragraphs 1 through 11.

19.   Southwestern is indebted to Steadfast for money had and received by Southwestern. As of July 2004, Southwestern was indebted to Steadfast in the amount of $312,192.88.

20.   As concerns the indebtedness set forth in the prior paragraph, none of said sum has been paid, although demand therefor has been made and there is now due, owing and unpaid from Southwestern to Steadfast $312,192.88, together with interest thereon.

WHEREFORE, Steadfast prays judgment against Southwestern, as follows:

(1) On Counts 1, 2, and 3, for damages to be determined at trial, in an amount no less than $312,192.88, together with interest thereon;

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

(2) For Steadfast's costs of suit herein; and

(3) For such other and further relief as this Court may deem just and proper.

Dated: May 29, 2008                    BARGER & WOLEN LLP

By: _____
    LARRY M. GOLUB
    VIVIAN I. ORLANDO
    Attorneys for Plaintiff Steadfast
    Insurance Company

**EXHIBIT A**

*D2-Attached*

# Steadfast Insurance Company
DOVER, DELAWARE
Administrative Offices - 1400 American Lane, Schaumburg, Illinois 60196-1056

## Commercial General Liability Declarations
## Occurrence Coverage

**Policy Number**
SCO 3963957-01

**Policy Period**
from 05/13/03    to 05/13/04

**Named Insured and Mailing Address**
Southwestern Equipment, LLC
Sierra Sun Equipment, LLC
5520 Wellesley Street, Suite 100
La Mesa, CA 91942

**Producer Name and Address**
Heath Insurance Brokers, Inc.
21550 Oxnard Street
Suite 950
Woodland Hills, CA 91367

**Producer Number 75409056**

The Policy Period begins and ends on the dates stated above at 12:01 A.M. Standard Time at your mailing address as stated above.

IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

This policy provides for the Limits of Insurance below: See Section III for definitions of Limits of Insurance

| | | |
|---|---|---|
| Each Occurrence Limit | $1,000,000 | |
| Personal and Advertising Injury Limit | $1,000,000 | Any One Person or Organization |
| Fire Damage Limit | $ 50,000 | Any One Fire |
| Medical Expense Limit | $ 5,000 | Any One Person |
| General Aggregate Limit (Other Than Products/Completed Operations) | $2,000,000 | |
| Products/Completed Operations Aggregate Limit | $2,000,000 | |

Form of Business:  ☐ Individual    ☐ Partnership    ☐ Joint Venture    ☒ Organization (Other than Partnership or Joint Venture)

Business Description: Grader

Location of all Premises you own, rent or occupy:
5520 Wellesley Street, Suite 100  La Mesa, CA 91942

For Classifications, Codes, Premium Basis, Rates, and Advance Premium,
See attached Schedule of Operations

Surplus Lines Tax 3.0% 10,249.89
Stamping Fee 0.125% 427.08

**Total Policy Premium: $ 341,663**    **Minimum & Deposit: $ 341,663**
Premium payable at inception is: $ 341,663

Forms and Endorsements attached to this policy: See attached Forms and Endorsement Schedule.

Countersigned this _5th_ day of _August, 2003_

_Janet Gordon Foster_
Authorized Representative

**EXHIBIT A**

STF-CGL-D-203-A CW (7/98)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 1 |

**NAMED INSURED:** Southwestern Equipment, LLC

### FORMS AND ENDORSEMENTS SCHEDULE

The following checked forms and endorsements are included in this policy:

| | | | |
|---|---|---|---|
| ☐ | CGL-111-C | 7/98 | Commercial General Liability Policy |
| ☒ | CGL-113-C | 7/98 | Commercial General Liability Policy - Defense Inside Limits |
| ☒ | GU-630-A | 11/02 | Disclosure of Terrorism Premium |
| ☒ | CGL-999 A | 7/98 | Form and Endorsement Schedule |
| ☐ | CGL-1001 A | 7/98 | Named Insured Listing |
| ☐ | CGL-1002 A | 7/98 | Location Listing |
| ☒ | CGL-1003 A | 7/98 | Cross Liability Suits Exclusion |
| ☐ | CGL-1101 A | 7/98 | Schedule of Operations |
| ☐ | CGL-1101 D | 3/02 | Schedule of Operations - Additional Insured Endorsement |
| ☐ | CGL-1101 E | 3/02 | Schedule of Operations |
| ☒ | CGL-1101 F | 3/02 | Schedule of Operations - Additional Insured Endorsement |
| ☐ | CGL-1106 A | 7/98 | Policy Cancellation |
| ☐ | CGL-1201 A | 7/98 | Self Insured Retention Endorsement |
| ☐ | CGL-1201 B | 4/01 | Self Insured Retention Endorsement (Defense Cost Included) |
| ☒ | CGL-1201 C | 4/01 | Self Insured Retention Endorsement - REV |
| ☐ | CGL-1221 A | 9/98 | Service of Suit Clause |
| ☒ | CGL-1221 A | 8/98 | Service of Suit Clause - California |
| ☐ | CGL-1303 A | 7/98 | Employee Benefits Liability Coverage |
| ☐ | CGL-1310 A | 7/98 | Stop Gap Employers Liability Coverage |
| ☐ | CGL-1320 A | 7/98 | Hired Auto and Non-Owned Auto Liability |
| ☒ | CGL-1403 A | 8/98 | Designated Construction Projects |
| ☐ | CGL-1410 A | 7/98 | Notice of Cancellation |
| ☒ | CGL-1421 A | 7/98 | Coverage Territory - Limited Worldwide |
| ☐ | CGL-1430 A | 7/98 | Total Pollution Exclusion - Hostile Fire Exception |
| ☒ | CGL-1435 A | 7/98 | Subcontractors Maintenance of Liability Limits |
| ☒ | CGL-1439 A | 7/98 | Primary/Non-Contributory Endorsement |
| ☒ | CGL-1469 A | 7/98 | Amendment to Coverage - Other Insurance |
| ☒ | CGL-1496 A | 7/98 | Non-Duplication of Limits |
| ☒ | CGL-1499 A | 7/98 | Amendment to Coverage |
| ☒ | CGL-1504 C | 7/98 | Continuing Claim Exclusion |
| ☒ | CGL-1510 A | 7/98 | Lead Exclusion |
| ☒ | CGL-1516 A | 8/98 | Designated Professional Services Exclusion |
| ☒ | CGL-1530 A | 8/98 | Year 2000 and Other Date-Related Problems |
| ☐ | CGL-1538 X | 7/98 | Roofing Contractors Exclusion |
| ☐ | CGL-1544 A | 7/98 | Foundations Exclusion |
| ☐ | CGL-1548 A | 7/98 | Designated Work - EIFS Exclusion |
| ☒ | CGL-1552 A | 9/99 | Designated Date for Products or Work Exclusion |
| ☒ | CGL-1565 A | 7/01 | Fungus Exclusion |
| ☐ | CGL-1575 A | 8/02 | Condominium and Townhouse Exclusion |
| ☒ | CGL-1575 B | 8/02 | Condominium, Townhouse and Cooperative Exclusion |

8


## FORMS AND ENDORSEMENTS SCHEDULE - CONT.

The following checked forms and endorsements are included in this policy:

| | | | |
|---|---|---|---|
| ☐ | CGL-1576 A | 8/02 | Condominium and Townhouse Exclusion w/ Specified Exception |
| ☐ | CGL-1576 B | 8/02 | Condominium, Townhouse and Cooperative Excl w Spec Exception |
| ☐ | CGL-1601 A | 7/98 | Vendors - Broad Form Additional Insured |
| ☒ | CGL-1602 A | 7/98 | Waiver of Subrogation |
| ☐ | CGL-1621 A | 7/98 | Additional Insured - Owners, Etc. / Automatic Status per Contract |
| ☐ | CGL-1621 B | 7/98 | Additional Insured - Owners, Etc. |
| ☐ | CGL-1621 C | 7/98 | Additional Insured - Scheduled (including Completed Operations) |
| ☐ | CGL-1632 A | 7/98 | Additional Insured - Lessor of Leased Equipment (Designated) |
| ☐ | CGL-1633 A | 7/98 | Additional Insured - Managers or Lessors of Premises (Designated) |
| ☐ | CGL-1636 A | 7/98 | Additional Insured - Mortgagee, Assignee or Receiver (Blanket) |
| ☐ | CGL-1637 A | 7/98 | Additional Insured - State or Political Subdivision - Permits |
| ☐ | CGL-1639 A | 7/98 | Additional Insured - Person or Organization (Designated) |
| ☒ | CGL-1645 C | 3/02 | Additional Insured - Premises / Ongoing Operations |
| ☐ | CGL-1646 C | 3/02 | Additional Insured - including Completed Operations |
| ☒ | | | ~~Wrap-Up/Wrap-Around Exclusion~~ |
| ☐ | | | Audit Premium Endorsement |

Countersigned _____ *Janet Jordan-Foster*

Authorized Representative

**ZURICH**

<div align="center">

**Steadfast Insurance Company**

</div>

# Commercial General Liability Policy
## Occurrence - Defense Costs Inside Limits

*Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*

*Throughout this policy the words "you" and "your" refer to the Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.*

*The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).*

*Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).*

In consideration of the payment of the premium, and in reliance upon the statements in the declarations and the application, and subject to the limits of insurance, and the terms, conditions and exclusions of this policy, we agree with you as follows:

## SECTION I - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" and "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages," and we will pay all "covered expenses" we incur with respect to such "suit," up to the limits of insurance. However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for "damages" and "covered expenses" is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when the applicable limit of insurance has been:

         (a) used up in the payment of "damages" or "covered expenses" under Coverages A or B or medical expenses under Coverage C; or

         (b) deposited in a court of competent jurisdiction.

      (3) If the limit of insurance is exhausted prior to settlement or judgment of any pending "suit," we have the right to withdraw from further defense of the "suit" by tendering control of the "suit" to the insured, and the insured agrees as a condition to the issuance of the policy to accept such tender.

   b.  This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the "policy period".

   (c) "Damages" because of "bodily injury" include "damages" claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury".

2. **Exclusions.**

   This insurance does not apply to:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

STF-CBL-113-C CW (7-98)
Page 1 of 14

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" which results from an act that is intended by the insured or can be expected from the standpoint of a reasonable person to cause "bodily injury" or "property damage," even if the injury or damage is of a different degree or type than actually intended or expected. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay "damages" by reason of assumption of the liability of others in a contract or agreement, whether written or oral. This exclusion does not apply to liability for "damages":

(1) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which an insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, grandparent, brother or sister of that "employee" of the insured, its parent, subsidiary or affiliate.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation of the insured to indemnify or contribute with another because of "damages" arising out of the "bodily injury."

This exclusion does not apply to liability assumed by the insured under an "insured contract."

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dis- persal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant, or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any "aircraft," "auto," or watercraft or snowmobile or trailer designed to use with a snowmobile owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading." This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned, rented or loaned to you or the insured; or

(4) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section V).

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes, without limitation, civil war, insurrection, rebellion or revolution.

j. **Damage to Property**

"Property damage" to:

(1) Property that the insured owns, rents, or occupies;

(2) Premises the insured sells, gives away, abandons, or ceases to have operational control over, if the "property damage" arises out of any part of those premises;

(3) Property loaned to the insured;

(4) Property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on such property.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work or Impaired Property**

"Damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

STF-CGL-113-C CW (7-98)
Page 3 of 14

12

o. **Asbestos**

Any obligation of ours:

(1) To investigate, settle or defend any claim or "suit" against any insured alleging actual or threatened injury or damages of any nature or kind, including loss of use to persons or property, which arises out of or would not have occurred but for:

    (a) Exposure to asbestos; or

    (b) Manifestation of any disease relating to the exposure to asbestos during the policy period or at any time prior to the policy period;

(2) To pay, contribute or indemnify another for any injury or damage resulting in judgments, settlements, loss, costs or expenses awarded or incurred that:

    (a) Arises out of any such claims or "suit"; or

    (b) Arises due to compliance with any action authorized by law relating to such injury or damage.

p. **Employment Related Practices**

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(3) Whether the insured may be liable as an employer or in any other capacity; and

(4) To any obligation to share damages with or repay someone else who must pay damages because of the injury;

q. **Nuclear Liability**

"Bodily injury" or "property damage":

(1) with respect to which the insured is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; (b) the insured is, or, had this policy not been available, would be entitled to indemnity from the United States of America or any agency thereof, with any person or organization; or

(3) Under any liability coverage, resulting from the "hazardous properties" of "nuclear material," if:

    (a) the "nuclear material" (i) is at any "nuclear facility" owned by the insured or operated by the insured or on the insured's behalf, or (ii) has been discharged or dispensed therefrom;

    (b) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported, or disposed of by the insured or on the insured's behalf; or

    (c) the "bodily injury" or "property damage" arises out of the furnishing by the insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion, (3) applies only to "property damage" to such "nuclear facility" and any property threat.

(4) As used in this exclusion:

    (a) "hazardous properties" includes radioactive, toxic or explosive properties;

    (b) "nuclear material" means "source material," "special nuclear material" or "by-product material";

    (c) "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

    (d) "spent fuel" means any fuel element or fuel component, solid or liquid, which has

STF-CGL-113-C CW (7-98)
Page 4 of 14

13

been used or exposed to radiation in a "nuclear reactor";

(e) "waste" means any waste material (i) containing "by-product material" other than the tailing or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content and (ii) resulting from the operations by any person or organization of a "nuclear facility" included within the definition of "nuclear facility" below;

(f) "nuclear facility" means:

(i) any "nuclear reactor";

(ii) any equipment or device designed or used for [1] separating the isotopes of uranium or plutonium, [2] processing or utilizing "spent fuel", or [3] handling, processing or packaging "wastes";

(iii) any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the amount of such material in your custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of "waste" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(g) "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(h) "property damage" includes all forms of radioactive contamination of property.

**COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seek-

ing those "damages," and we will pay all "covered expenses" we incur with respect to such "suit" up to the limits of insurance. However, we will have no duty to defend the insured against any "suit" seeking "damages" for "personal injury" or "advertising injury" to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for "damages" and "covered expenses" is limited as described in LIMITS OF INSURANCE (Section III); and

(2) Our right and duty to defend end when the applicable limit of insurance has been:

(a) used up in the payment of "damages" or "covered expenses" under Coverages A or B or medical expenses under Coverage C; or

(b) deposited in a court of competent jurisdiction.

(3) If the Limit of Insurance is exhausted prior to settlement or judgment of any "suit", we will have the right to withdraw from further defense of the "suit" by rendering control of such defense to the insured, and the insured agrees as a condition to the issuance of this policy to accept such tender.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the "policy period."

2. **Exclusions**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) **False Publications**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) **Publications Prior to Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) **Violation of Penal Statutes or Ordinances**

Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) **Liability Assumed by Contract**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement;

(5) **Pollution**

(a) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(b) Any loss, cost or expense arising out of any:

(i) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(ii) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant, or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(6) **Asbestos**

Any obligation of ours:

(a) To investigate, settle or defend any claim or "suit" against any insured alleging actual or threatened injury or damages of any nature or kind, including loss of use to persons or property, which arises out of or would not have occurred but for:

(i) Exposure to asbestos; or

(ii) Manifestation of any disease relating to the exposure to asbestos during the policy period or at any time prior to the policy period;

(b) To pay, contribute or indemnify another for any injury or damage resulting in judgments, settlements, loss, costs or expenses awarded or incurred that:

(i) Arises out of any such claims or "suit"; or

(ii) Arises due to compliance with any action authorized by law relating to such injury or damage.

(7) **Employment Related Practices**

To a person arising out of any:

(a) (i) Refusal to employ that person;

(ii) Termination of that person's employment; or

(iii) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person; or

(b) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" or "advertising injury" to that person at whom any of the employment-related practices described in paragraphs (i), (ii) or (iii) above is directed.

This exclusion applies:

(c) Whether the insured may be liable as an employer or in any other capacity; and

(d) To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

b. "Advertising injury" arising out of:

(1) **Breach of Contract**

Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) **Advertised Quality or Performance**

The failure of goods, products or services to conform with advertised quality or performance;

(3) **Wrong Price**

The wrong description of the price of goods, products or services;

(4) **Infringement of Patent or Trademark**

Infringement of patent or trademark, whether direct, contributory or by inducement; or

**(5) Advertising, Broadcasting, Publishing or Telecasting Business**

An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement.**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations; provided that:

         (a) The accident takes place in the "coverage territory" and during the policy period;

         (b) The expenses are incurred and reported to us within one year of the date of the accident;

         (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

   We will not pay for expenses for "bodily injury":

   a. To any insured.

   b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. To a person injured on that part of premises you own or rent that the person normally occupies.

   d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or similar law.

   e. To a person injured while taking part in athletics.

   f. Included within the "products-completed operations hazard."

g. Excluded under Coverage A.

h. If you are a club, to any of your members.

i. If you are a hotel, motel or tourist court, to any of your guests.

j. Arising from or in connection with any medical expenses for services by you, any of your employees or any person or organization under a contract to you to provide such services.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees," other than your "executive officers," but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

      (1) "Bodily injury" or "personal injury";

         (a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, grandparent, brother or sister of that co-"employee";

         (c) For which there is any obligation to indemnify or contribute with another who must pay "damages" because of the injury described in (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care custody or control of, or over which physical control is being

STF-CGL-113-C CW (7-98)
Page 7 of 14

**16**

exercised for any purpose by you, any of your "employees," or, if you are a partnership or joint venture, by any partner or member.

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to that person's duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured but only with respect to liability arising out of the operation of the equipment, and, only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. "Damages" and "covered expenses" under Coverage A, except "damages" and "covered expenses" because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. "Damages" and "covered expenses" under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for "damages" and "covered expenses" because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all "damages" and "covered expenses" because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. "Damages" and "covered expenses" under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for "damages" and "covered expenses" because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this policy apply separately to each consecutive "policy period." The "policy period" begins with the effective date shown in the Declarations. If the "policy period" is extended after issuance for any additional period, the additional period will be deemed part of the last preceding period for the purpose of determining the limits of insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event of "Occurrence," Offense, Claim or "Suit."**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) immediately record the specifics of the claim or "suit" and the date received; and

      (2) notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, adjustment or settlement of the claim, in our coverage investigation, and in defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or "damage" to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, admit liability or incur any expense other than for first aid, without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this policy:

   a. To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

   b. To sue us on this policy unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the available limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this policy, our obligations are limited as follows:

   a. Primary Insurance

      This insurance is primary except when there is other insurance applying on a primary basis. Then b. below applies.

   b. Excess Insurance

      This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis.

      When this insurance is excess, we will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

      When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

      (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

      (2) The total of all deductible and self-insured amounts under any other insurance.

5. **Premium.**

   a. The first Named Insured is responsible for the payment of all premiums, which are due in full 30 days after the policy period begins; and the first

Named Insured shall be the payee for any return premium that becomes due.

b. If the premium is a flat charge, it is not subject to adjustment.

c. If the premium is other than a flat charge, it is an advance premium only. The earned premium will be computed at the end of each year in which this insurance is in force at the rate shown in the Declarations, subject to the minimum annual premium.

6. **Review of Records.**

We may examine and audit your books and records as they relate to this insurance:

a. At any time during the "policy period";

b. Up to three years afterwards; or

c. Within one year after final settlement of all claims under this policy.

7. **Inspections and Surveys.**

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

a. Are safe and healthful; or

b. Comply with law, regulations, codes or standards.

8. **Representations and Warranties.**

By accepting this policy, you agree, represent and warrant that:

a. The statements in the Declarations are accurate and complete;

b. The statements in the Declarations are based upon representations you made to us;

c. The statements in the application for this insurance and any supplementary material attached to it are truthful, accurate and complete; and

d. We have issued this policy in reliance upon your representations as contained in (a.) through (c.) above.

9. **Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

10. **Transfer of Rights of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payments we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

11. **Cancellation and Nonrenewal**

a. The first Named Insured shown in the Declarations may cancel this policy by surrendering it to us or our authorized agent or by sending us written notice stating when the cancellation will be effective.

b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If the policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. We may adjust the premium either when cancellation becomes effective or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered a refund.

f. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

g. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

12. **Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

13. **Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties, but only with respect to that property.

**SECTION V - DEFINITIONS**

1. **"Advertising injury"** means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business; or

    d. Infringement of copyright, title or slogan.

    Such offenses must be committed in the course of advertising your goods or products during the "policy period."

2. **"Auto"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. **"Aircraft"** means a vehicle used or built for flight in the air.

4. **"Bodily injury"** means physical injury, sickness or disease and mental anguish or emotional distress when accompanied by physical injury, sustained by a person, including death resulting from any of these at any time.

5. **"Coverage territory"** means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in (a) above; or

c. All parts of the world if:

    (1) The injury or damage arises out of:

        (a) Goods or products made or sold by you in the territory described in a. above; or

        (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

    (2) The insured's responsibility to pay "damages" is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

6. **"Covered expenses"** means:

    a. All expenses we incur for investigation, adjustment and defense of claims and "suits," including attorneys' fees, expert and witness fees and court costs;

    b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds;

    c. All reasonable expenses incurred by the insured with our prior written consent to assist us in the investigation, adjustment or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off work;

    d. All costs taxed against the insured in the "suit";

    e. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on the period of time after the offer; and

    f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

    "Covered expenses" do not include the salaries of your "employees" or our "employees."

    These payments will reduce the limits of insurance.

7. **"Damages"** means money that is paid to compensate an injured party for "bodily injury," "property damage," "personal injury" or "advertising injury".

8. **"Employee"** includes a "leased worker." "Employee" does not include a "temporary worker."

9. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. **"Impaired property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    c. The repair, replacement, adjustment, or removal of "your product" or "your work"; or

    d. Your fulfilling the terms of the contract or agreement.

11. **"Insured contract"** means a written contract for:

    a. A lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality;

    e. An elevator maintenance agreement; or

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

    (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

        (b) Giving directions or instruction, or failing to give them, if that is the primary cause of the injury or damage;

    (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for any injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

12. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. A "leased worker" does not include a "temporary worker."

13. **"Loading or unloading"** means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an "aircraft", watercraft or "auto";

    b. While it is in or on an "aircraft," watercraft or "auto"; or

    c. While it is being moved from an "aircraft", watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the "aircraft", watercraft or "auto."

14. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

STF-CGL-113-C CW (7-98)
Page 12 of 14

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing;

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

15. "**Occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage."

16. "**Personal injury**" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Any of the following acts if done by or on behalf of an owner, landlord or lessor:

(1) Wrongful eviction from,

(2) Wrongful entry into, or

(3) Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

17. "**Policy period**" means the period set forth in Item 1 of the Declarations.

18 a. "**Products-completed operations hazard**" means all "bodily injury" and "property damage" occurring away from premises you own rent or occupy and arising out of "your product" or "your work," except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials;

(3) Products or operations for which the classification in this policy or in our manual of rules includes products or completed operations.

19. "**Property damage**" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

20. **"Suit"** means a civil proceeding in which "damages," because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this policy applies are alleged. "Suit" includes an arbitration proceeding alleging such "damages" to which the insured submits with our consent, or any alternative dispute resolution in which such "damages" are claimed and to which the insured submits with our consent.

21. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

22. **"Your product"** means:

a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1) You;

    (2) Others trading under your name; or

    (3) A person or organization whose business or assets you have acquired; and

b.  Containers (other than vehicles), materials parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b.  The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

23. **"Your work"** means:

a.  Work or operations performed by you or on your behalf; and

b.  Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

c.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

d.  The providing of or failure to provide warnings or instructions in connection with such goods or products.



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 2 |

NAMED INSURED: Southwestern Equipment, LLC

| | Cross Liability Suits Exclusion |
|---|---|

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**This policy does not apply to** "bodily injury", "property damage", "personal injury" or "advertising injury" sustained by any named insured, whether or not such injury or damage arises out of the activities or operations of any other named insured.

Countersigned_____

Authorized Representative

STF-CGL-1003A CW (7/98)

24



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 08/05/03 | ENDORSEMENT NUMBER 3 |
|---|---|---|---|---|---|---|

**NAMED INSURED: Southwestern Equipment, LLC**

| Schedule of Operations |
|---|

General Liability Hazards:

| Description Of Hazards | Code Number | Premium Basis | | Rate | Advance Premium |
|---|---|---|---|---|---|
| Grading of Land | 95410 | $ 1,775,000 | P | 19.05 | $ 338,280 |
| | | $ | | | $ |
| | | $ | | | $ |
| Certified Terrorism Surcharge (1% of Advance Premium): | | | | | $ 3,383 |
| Additional Insured Endorsements charges: | | | | | |
| # of endorsements issued at inception: | | | | | |
| **TOTAL ADVANCE PREMIUM** (Minimum & Deposit) | | | | | $ 341,663 |
| **MINIMUM ANNUAL PREMIUM** | | | | | $ 341,663 |
| **MINIMUM EARNED PREMIUM** (Minimum Earned Premium is 25% of Advance Premium) | | | | | $ 85,416 |

Premium Basis Guide
s - Per $1,000 of Gross Sales
c - Per $1,000 Total Cost
p - Per $100 Payroll
o - Other

Definitions
Gross Sales - means Gross Sales of the Insured less intercompany sales and any sales from those operations specifically excluded by endorsement to this policy.
Payroll - means total Payroll of the Insured less overtime premium payroll and any payroll for those operations specially excluded by endorsement to this policy.

Additional Insured Endorsement (#1646C) Premium Basis
1-20 endorsements - 15% of annual premium, $5,000 minimum
21-50 endorsements - 20% of annual premium, $10,000 minimum
51-100 endorsements - 30% of annual premium, $25,000 minimum
101+ endorsements - 40% of annual premium, $40,000 minimum
Maximum annual premium charge - $50,000.

Countersigned _____
Authorized Representative

25

STF-CGL-1101 F CW (3/02)

**Steadfast Insurance Company**



**ZURICH**

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 4 |

**NAMED INSURED:** Southwestern Equipment, LLC

> **Self Insured Retention Endorsement (Defense Costs Included)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

---

### SCHEDULE
#### SELF INSURED RETENTION AMOUNTS

$ 25,000    **Per Occurrence**

$           **Per Claim**

**AGGREGATE $**

**PERIODIC REPORTING REQUIREMENT** - Quarterly

**LEVEL OF NOTIFICATION OF POTENTIAL PENETRATION -**    75 % OF SELF INSURED RETENTION

---

*Throughout this policy the words "you" and "your" refer to the Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.*

*The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).*

*Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).*

The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies:

**I. Self Insured Retention and Defense Costs - Your Obligations**

A. The "self insured retention" amounts stated in the Schedule of this endorsement apply as follows:

1. If a Per Occurrence "self insured retention" amount is shown in the Schedule of this endorsement, it is a condition precedent to our liability that you make actual payment of all damages and "defense costs" for each "occurrence" or offense, until you

have paid "self insured retention" amounts and "defense costs" equal to the Per Occurrence amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. Payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy the "self insured retention." Satisfaction of the "self insured retention" as a condition precedent to our liability applies regardless of insolvency or bankruptcy by you. The Per Occurrence amount is the most you will pay for "self insured retention" amounts and "defense costs" arising out of any one "occurrence" or offense, regardless of the number of persons or organizations making claims or bringing suits because of the "occurrence" or offense.

Countersigned _____  *Janet Gordan Foster*

Authorized Representative

26

STF-CGL-1201 C CW (4/01)

2. If a Per Claim "self insured retention" amount is shown in the Schedule of this endorsement, it is a condition precedent to our liability that you make actual payment of all damages and "defense costs" for each claim until you have paid "self insured retention" amounts and "defense costs" equal to the Per Claim amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. Payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy the "self insured retention." Satisfaction of the "self insured retention" as a condition precedent to our liability applies regardless of insolvency or bankruptcy by you The Per Claim amount is the most you will pay for "self insured retention" amounts and "defense costs" sustained by any one person or organization as a result of any one "occurrence" or offense.

3. If an Aggregate "self insured retention" amount is shown in the Schedule of this endorsement, the Aggregate amount is the most you will pay for all "self insured retention" amounts and "defense costs" incurred under this policy. This amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

   If no entry appears in the Schedule of this endorsement as Aggregate, then your obligation for payment of "self insured retention" amounts and "defense costs" applies in accordance with the Per Occurrence or Per Claim "self insured retention" provisions, as applicable.

4. Except for any "defense costs" that we may elect to pay, you shall pay all such "defense costs" as they are incurred until you have paid "defense costs" and damages for "bodily injury," "property damage", "personal injury," "advertising injury", medical payments or any other such coverages which may be included in the policy, equal to the applicable "self insured retention" amount. If any final judgment or settlement and "defense costs" is less than the "self insured retention" amount stated above, we shall have no obligation to reimburse you or pay "defense costs" under this policy.

**B. Settlement of Claim**

You may not settle any claim or suit which exceeds any "self insured retention" amount indicated in the Schedule of this endorsement

without our written permission to do so. If you fail to obtain such written permission, we shall have no obligation to provide coverage for that claim or suit under this policy.

**C. Authorized Claim Service Provider**

1. You shall employ a claim service provider acceptable to us for the purpose of providing claim services for settlement of losses within the "self insured retention" amounts. You shall pay all fees, charges and costs of the claim service provider in addition to the "self insured retention" amounts, without any reimbursement from us.

2. In the event of cancellation, expiration or revision of the claims service contract between you and the claim service provider, you shall notify us within (10) days of such change and shall replace the claim service provider with another claim service provider that is acceptable to us.

**D. Notification of Potential Penetration**

1. You or the authorized claim service provider must notify us promptly of an "occurrence" or offense which may result in a claim under this policy. Notice must include:

   a. How, when and where the "occurrence or offense too place;

   b. The names and addresses of any injured persons and witnesses;

   c. The nature and location of any injury or damage arising out of the "occurrence" or offense.

2. You or the authorized claim service provider must notify us promptly, per D.I. above, in the event of any "occurrence" or offense, without regard to liability, which results in any of the following injuries:

   a. Death;

   b. Brain damage;

   c. Paraplegic or quadriplegic impairment;

   d. Amputation or serious functional impairment of any major limb;

   e. Severe burns involving more than 25% of the body or causing serious disfigurement;

   f. sensory impairment (sight, hearing, taste or smell);

   g. Severe internal body organ damage or loss;

   h. Multiple fractures involving more than one body part;

27

i.   Permanent and total disability;
j.   Sexual abuse or molestation; or
k.   Significant psychological / neurological involvement.

3. You or the authorized claim service provider must notify us promptly of any:

a. potential exposure which equals or exceeds the level of notification of potential penetration of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies;

b. loss reserve established which equals or exceeds the level of notification of potential penetration of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies;

c. potential judgment, if the claim prevails, without regard to liability, which equals or exceeds the level of notification of potential penetration of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies; or

d. suit, in the event a suit is filed, and we shall have the right to appoint defense counsel, even if the amount claimed in the suit is unspecified or less than the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies.

**E. Reporting - Self Insured**

1. You must report on claims or suits per the following:

You or the authorized claim service provider must monitor the cumulative "self insured retention" incurred amounts and "defense costs" sustained during the policy period and report those total amounts to us in accordance with the frequency of report indicated in the Periodic Reporting Requirement of the Schedule of this endorsement. However, if the total of all incurred losses and "defense costs" should at any time during the policy period attain a total amount equal to 75% of the Aggregate Self Insured Retention

amount, you are required in that event to make an immediate report to us as to total incurred losses and "defense costs" sustained at that time.

The Periodic Report that you send to us must be in a format that is acceptable to us, and include an accounting of all individual losses and "defense costs" incurred as of the date of the Report.

2. Within forty-five (45) days after the end of the policy term, you must give us a listing of all existing claims or suits within the Self Insured Retention Amounts. At a minimum, such listing will include the following for each claim or suit:

i.   a description of each
ii.  the date of the "occurrence" or offense;
iii. the amounts paid and reserved for future payments for loss and "defense costs"; and
iv.  the current status of

3. Quarterly thereafter, you are required to give us an updated listing of the status of all claims or suits, both paid and reserved, until all claims or suits for the reporting period are closed or settled.

4. Compliance with the reporting requirements set forth in this endorsement is a condition precedent to coverage. You acknowledge that in the event of non-compliance, we shall not be required to establish prejudice resulting from the non-compliance, but shall be automatically relieved of liability with respect to the claim.

**F. Representations**

By acceptance of this policy you agree that you will not procure insurance for all or any part of the "self insured retention" amounts shown in the Schedule of this endorsement. If such insurance is procured, there will be no coverage under this policy.

**II. Self Insured Retention and Defense Costs - Our Rights and Obligations**

A. In no event shall this policy be obligated to satisfy your obligations for the payment of "self insured retention" amounts or "defense costs."

B. We shall be liable only for the amount of damages and "defense costs" in excess of the "self insured retention" amounts as applicable, shown in the Schedule above, up to the applicable Limits of Insurance shown in the Declarations of this policy.

STF-CGL-1201 C CW (4/01)
page 3 of 4



**C. Settlement of Claim**

1. We shall have, at our option, the right to negotiate the settlement of any claim we deem expedient both within and in excess of the applicable "self insured retention" amount, but we shall obtain your consent prior to entering into any settlement of any claim which is equal to or less than the "self insured retention" amount. If, however, you shall refuse to consent to any settlement recommended by us within the "self insured retention" amount and shall elect to contest the claim or continue with any legal proceedings in connection with such claim, our liability for that claim shall not exceed the amount determined by subtracting the "self insured retention" amount from the amount for which the claim could have been settled, including "defense costs" incurred with our consent to the date of such refusal. And we shall have no liability with respect to such claim if that difference is zero or negative.

2. With respect to any claim under this insurance which has been tendered to us and which may exceed the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies, we may pay any or all of the "self insured retention" amount and "defense costs" on your behalf to defend or to effect settlement of such claim. Such amount paid by us shall be reimbursed promptly by you.

   Regardless of whether the damages for "bodily injury", "property damage", "personal injury", "advertising injury" medical payments or any other such coverages or "defense costs" for which coverage is provided under this policy appear likely to exceed the "self insured retention" amounts stated above, we shall have the right, but not the duty, to defend any claim seeking damages for which coverage would be provided under this policy regardless of the "self insured retention" amounts. In the event we incur any "defense costs" in the exercise of our right to defend any claim, you shall not be liable to reimburse us for those "defense costs".

**III. Midterm Cancellation**

In the event of a midterm cancellation of this policy, the "self insured retention" amount shown in the Schedule of this endorsement as Aggregate is not subject to any pro rata reduction. Such Aggregate amount will apply as if the policy term had not been shortened.

**IV. Definitions**

A. "Self insured retention"

   the amount or amounts which you or any insured must pay for all compensatory damages which you or any insured shall become legally obligated to pay because of "bodily injury", "property damage", "advertising injury", "personal injury", medical payments or any other such coverage included in the policy, sustained by one or more persons or organizations.

B. "Defense costs" means:

   expenses directly allocable to specific claims and shall include but not be limited to all Supplementary payments as defined under the policy(ies); all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical costs containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy(ies).

STF-CGL-1201 C CW (4/01)
page 4 of 4



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 08/05/03 | ENDORSEMENT NUMBER 5 |
|---|---|---|---|---|---|---|

**NAMED INSURED: Southwestern Equipment, LLC**

**Important Notice**

### Service of Suit Clause - California

In the event of our failure to pay any amount to be due under this policy, at your request, we will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is agreed that service of process in such suit may be made upon our General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and we will abide by the final decision of such court or of any appellate court in the event of an appeal of any suit initiated against us under this policy.

If any statute of any state, territory or district of the United States requires services of process be made upon an officer of the state, we designate the Superintendent, Commissioner, or Director of Insurance, or other officer specified for this purpose in the statute, as our true and lawful attorney whom may be served any lawful process instituted by you or on your behalf, or any beneficiary, arising out of this policy. We designate Carpenter & Moore Insurance Services, Inc., 111 Pine Street, Suite 777, San Francisco, California 94111 as whom the said officer is authorized to mail such process.

### In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, we agree to provide insurance as stated in this policy. This policy shall not be valid unless countersigned by our duly authorized representative.

In Witness Whereof, we have executed this policy, and, where required, have had it countersigned by our duly authorized representative.

_____  
**President**  
**Steadfast Insurance Company**

_____  
**Corporate Secretary**  
**Steadfast Insurance Company**

Countersigned _____  
             Authorized Representative

STF-CGL-1221 A CA (8/98)

30



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 6 |

NAMED INSURED: Southwestern Equipment, LLC

> **Designated Construction Project(s) - General Aggregate Limit Defense Costs Outside Limits**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

### SCHEDULE

**Designated Construction Projects:**

Any Project covered by this policy for which the Insured is required under written contract to provide a separate General Aggregate Limit.

**If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.**

A. For all sums which the insured becomes legally obligated to pay as "damages" caused by "occurrences" under COVERAGE A. (SECTION I) and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A seperate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all "damages" under COVERAGE A, except "damages" because of "bodily injury" or "property damage" included in the "products-completed operations hazard" and for medical expenses under COVERAGE C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE A for "damages" or under COVERAGE C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

Countersigned _____

        Authorized Representative

STF-CGL-1403 A CW (8/98)
page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

31

B. For all sums which the insured becomes legally obligated to pay as "damages" caused by "occurrences" under COVERAGE A. (SECTION I) and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

    1. Any payments made under COVERAGE A for "damages" or under COVERAGE C for medical expense shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

    2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for "damages" because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the general Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

D. If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specification or timetables, the project will still be deemed to be the same construction project.

E. The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

STF-CGL-1403 A CW (8/98)
page 2 of 2


**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 7 |

**NAMED INSURED:** Southwestern Equipment, LLC

**Coverage Territory - Limited Worldwide**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

Commercial General Liability Coverage Part
Products-Completed Operations Liability Coverage Part

1. Section V., the "Coverage Territory" definition is replaced by the following:

   a. Anywhere in the world, excluding Cambodia, Cuba, Iran, Iraq, Laos, Libya, North Korea, Mongolia, Croatia, Macedonia, Slovenia, Bosnia, Herzegovina, Serbia, Sudan, Afghanistan, and any country not listed for which a United States of America Department of State ban is issued during the policy term; or
   b. International waters or airspace, provided the injury or "damage" does not occur in the course of travel or transportation to or from any place excluded in a. above.

2. The Insuring Agreement is amended by adding the following:

   We have the right and duty to defend any "suit" asking for covered "damages" arising from the insured's operations within the "coverage territory", provided the "suit" is brought within the United States of America, including its territories and possessions, Puerto Rico or Canada. We may investigate and settle any such claim or "suit" as we consider appropriate, but we have not duty to defend any "suit" that is not covered by this Coverage Part.

Countersigned _____ *Janet Jordan-Foster*
                    Authorized Representative

STF-CGL-1421 A CW (7/98)

33



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 08/05/03 | ENDORSEMENT NUMBER 8 |
|---|---|---|---|---|---|---|

NAMED INSURED: Southwestern Equipment, LLC

> **Subcontractors Maintenance of Liability Limits**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

### SCHEDULE

**Designated Subcontractors:**
The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any provisions elsewhere in the policy shall control the application of insurance to which this endorsement applies.

1.  You will require that all subcontractors shown in the Schedule of Designated Subcontractors, while performing operations for during the period of their contract with you will:

    a.  Maintain Commercial General Liability insurance coverage provided by:

        [X] an insurance company with an "A " Best rating or better, or
        [ ] the following insurance company:

    b.  Provide minimum limits as respects Coverage A. Bodily injury or Property damage of
        $ 1,000,000    Each Occurrence, $ 1,000,000    General Aggregate, $ 1,000,000
        Products Completed Operations Aggregate;
        (For any blasting contractor, limits of $          Each Occurrence, $
        General Aggregate, $          Products-Completed Operations Aggregate);

    c.  Have you added to their policies as an Additional Insured in accordance with a. and b. above;

    d.  Provide you with Certificates of Insurance showing the coverage requirements indicated in a., b., and c. above.

Countersigned ___*Janet Jordan-Foster*___
                 Authorized Representative

STF-CGL-1435 A CW (7/98)
page 1 of 2

2.  Your failure to comply with the conditions above will not alter the coverage provided by this policy. However, should you fail to comply, we will consider such independent subcontractors to be your employees for the purpose of computing rate and premium and such premium will be charge at a rate of:

>   $ 28.57        per $100        of contract cost

3.  Commercial General Liability insurance maintained by your subcontractors, within which you are an Additional Insured, will be considered primary insurance and our policy will be considered excess of the limits of insurance of that subcontractor's primary coverage, notwithstanding any contrary language that may exist in any Other Insurance condition of the policy.

4.  All other terms and conditions of the policy not affected by this endorsement remain the same.


_____        _____
Insured                           By

_____        _____
Title                             Date



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 08/05/03 | ENDORSEMENT NUMBER 9 |
|---|---|---|---|---|---|---|

**NAMED INSURED: Southwestern Equipment, LLC**

---

Primary/Non-Contributory Endorsement

---

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

The insurance provided by this policy will be primary and noncontributory insurance, but only as respects a claim, loss or liability arising out of insured operations or work on behalf of a person or organization shown as an Additional Insured under this policy and performed under an "insured contract" between you and such person or organization, that requires you to maintain such primary and noncontributory insurance and to include them as an additional insured.

Countersigned _Janet Jordan-Foster_____

Authorized Representative

36



**Steadfast Insurance Company**    **ZURICH**

| POLICY<br>NUMBER<br>SCO 3963957-01 | EFF. DATE<br>OF POLICY<br>05/13/03 | EXP. DATE<br>OF POLICY<br>05/13/04 | EFF. DATE<br>OF ENDT.<br>05/13/03 | PRODUCER<br>NUMBER<br>75409056 | DATE<br>TYPED<br>08/05/03 | ENDORSEMENT<br>NUMBER<br>10 |
|---|---|---|---|---|---|---|

**NAMED INSURED: Southwestern Equipment, LLC**

Amendment to Coverage - Other Insurance

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

SECTION IV - Commercial General Liability Conditions, 4. Other Insurances is amended by the addition of the following:

In the event of bankruptcy, insolvency or refusal or inability to pay, of any other insurer or prior insurer, the insurance afforded by this policy will not replace such insurance, but will apply as if all the limits of any other insurer or prior insurance are fully available and collectible.

Countersigned _____

Authorized Representative

37



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 11 |

NAMED INSURED: Southwestern Equipment, LLC

<div style="border:1px solid">

**Non-Duplication of Limits**

</div>

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

It is agreed that if any "occurrence" covered by both this policy and any prior policies issued by us to the insured, our total limit of liability for all of these policies combined shall not exceed the each occurrence limit of liability as shown in the Limits of Insurance section of the Declarations page of this policy.

Countersigned _____ *Janet Gordan Foster* _____
        Authorized Representative

38                                STF-CGL-1496 A CW (7/98)


**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 08/05/03 | ENDORSEMENT NUMBER 12 |
|---|---|---|---|---|---|---|

**NAMED INSURED: Southwestern Equipment, LLC**

> **Specified Entity Exclusion**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is understood and agreed no coverage is afforded under this policy for the following entities or their operations or activities:

> Southwestern Equipment, Inc.
> Pacific Erosion Control, Inc.
> Paramount R & R, Inc.
> RLF, Inc.

All other terms and conditions remain unchanged.

Countersigned _____ *Janet Gordan Foster*
        Authorized Representative

STF-CGL-1499 A CW (7/98)

39



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 13 |

NAMED INSURED: Southwestern Equipment, LLC

|  |
|---|
| Continuing Claim Exclusion |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

This policy does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any claim against the insured which is alleged to be continuing in nature if the damage or any of it was known prior to the effective date of this policy.  This exclusion will apply whether or not the cause of the damage was known prior to the effective date of this policy.  In no event will this policy apply to any lawsuit against the insured if the filing date of the original complaint was prior to the effective date of this policy, whether or not the insured was a party, and whether or not the insured was served with process prior to the effective date of this policy.

Claim, as used in this endorsement, means any demand for money, services or any suit.

Countersigned _____

Authorized Representative

STF-CGL-1504 C CW (7/98)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 14 |

NAMED INSURED: Southwestern Equipment, LLC

|  |
|---|
| Lead Exclusion |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

This policy does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of lead or any materials, goods or products containing lead.

Countersigned ___Janet Gordan-Foster___

Authorized Representative

STF-CGL-1510 A CW (7/98)

41



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 08/05/03 | ENDORSEMENT NUMBER 15 |
|---|---|---|---|---|---|---|

**NAMED INSURED:** Southwestern Equipment, LLC

> **Designated Professional Services Exclusion**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

SCHEDULE

Description of Professional Services:

1.  **Any service relating to products and/or operations other than "your products" and/or "your work"**

With respect to any professional services shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" due to the rendering or failure to render any professional service.

Countersigned _____*Janet Gordan—Foster*_____
        Authorized Representative

STF-CGL-1516 A CW (8/98)


**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 08/05/03 | ENDORSEMENT NUMBER 16 |
|---|---|---|---|---|---|---|

**NAMED INSURED: Southwestern Equipment, LLC**

> ### Year 2000 and Other Date-Related Problems - Exclusion

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

Commercial General Liability Coverage Part
Products-Completed Operations Liability Coverage Part

**With respect to coverage(s) provided under this policy, the following additional exclusion applies and supersedes any policy provision to the contrary.**

A.  This insurance does not apply to any sums the insured becomes legally obligated to pay as damages, or to any loss, cost or expense, arising out of or traceable to, whether wholly or in part, directly or indirectly, regardless of any other cause or event that contributes concurrently or in any sequence to such damages, loss, cost or expense:

1.  Any possible, potential, anticipated, actual, or alleged failure, malfunction, problem, deficiency, fault, inadequacy, problem or reduced usefullness of:

    a.  Any of the following (whether owned, possessed, controlled, or operated by any insured or any others):

    (1)  Computer hardware;

    (2)  Computer software;

    (3)  Computer applications;

    (4)  Computer operating systems and related software;

    (5)  Computer networks, networking equipment, or data transmission systems;

    (6)  An "embedded system";

    (7)  Electronic media or data; or

    (8)  Any other computerized or electronic equipment, devices or components.

Countersigned _____
                          Authorized Representative

STF-CGL-1530 A CW (8/98)

b.  Any products, services, or data, whether owned, possessed, controlled, provided, or performed by, for or on behalf of any insured or any others, that directly or indirectly uses or relies upon, in any manner, any of the items listed in Paragraph A.1.a. above;

c.  "Your product" or any part of it; or

d.  "Your work" or any part of it;

relating to or resulting from any date-related function, operation or data including, but not limited to, any function, operation or data related to the year 2000 and beyond.

2.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement, supervision, or any other service, provided or performed, or not provided or performed, at any time to test for, determine, evaluate, rectify, verify or check for any possible, potential, anticipated, actual or alleged failure, malfunction, deficiency, fault, inadequacy, or reduced usefulness of any of the items described in Paragraph A.1.a. through Paragraph A.1.d above relating to or resulting from any date-related function, operation or data.

3.  Any failure to warn, alert, caution, notify or advise of any possible, potential, anticipated, actual or alleged failure, malfunction, deficiency, fault, inadequacy, or reduced usefulness of any of the items described in Paragraph A.1.a. through Paragraph A.1.d. above relating to or resulting from any date-related function, operation or data.

B.  For purposes of this endorsement, the following definition is added:

"Embedded system" means any microprocessor, computer chip, integrated circuit, embedded chip, or transistorized module of any type which is a component of any electronic or mechanical device, appliance, or equipment. "Embedded system" also means any operating system, application, or software that is used with any such microprocessor, computer chip, integrated circuit, embedded chip, or transistorized module.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc. 1997
(For use with Liability and other related forms)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 08/05/03 | ENDORSEMENT NUMBER 17 |
|---|---|---|---|---|---|---|

NAMED INSURED: Southwestern Equipment, LLC

| Designated Date for Products or Work Exclusion |
|---|

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

| SCHEDULE |
|---|
| Products: 05/13/1996 |
| Work: 05/13/1996 |

This policy does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" included in the "products-completed operations hazard" and arising out of any of "your products" manufactured, assembled, sold, handled or distributed by or on behalf of you prior to the date shown in the Schedule or "your work" performed by or on behalf of you prior to the date shown in the Schedule.

Countersigned _____
Authorized Representative

STF-CGL-1552 A CW (9/99)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 18 |

NAMED INSURED: Southwestern Equipment, LLC

| | |
|---|---|
| | **Fungus Exclusion** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" caused directly or indirectly, in whole or in part, by:

1.     Any "fungus(es)" or spore(s)", or

2.     Any substance, vapor or gas produced by or arising out of any "fungus(es)" or "spore(s)", or

3.     Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus(es)" or "spore(s)"

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury or damage.

For the purposes of this endorsement, the following definitions are added:

"Fungus(es)" includes, but is not limited to, any form or type of mold, mushroom or mildew.

"Spore(s)" means any reproductive body produced by or arising out of any "fungus(es)".

Countersigned _____
    Authorized Representative

STF-CGL-1565 A CW (7/01)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 19 |

NAMED INSURED: Southwestern Equipment, LLC

---

**Condominium, Townhouse and Cooperative Exclusion**

---

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

### Commercial General Liability Coverage Part

This policy does not apply to any claim, "suit" or demand seeking "damages" for "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of or in any way connected to "your work" or "your product" as respects any condominium, townhouse, or cooperative dwelling including but not limited to individual, common or cooperative areas.

No duty to defend or to pay any other expenses is provided by this policy for any claim, "suit" or demand which is excluded by the terms of this endorsement.

All other terms, conditions and exclusions remain the same.

Countersigned _____ *Janet Gordan-Foster*
                        Authorized Representative

STF-CGL-1575 B CW (8/02)

47



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 20 |

NAMED INSURED: Southwestern Equipment, LLC

| Waiver of Subrogation (Blanket) |
|---|

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

The following is added to Section IV, Conditions, paragraph 13, Transfer of Your Rights and Duties Under This Policy:

If you are required by a written contract or agreement, which is executed before a loss, to waive your rights of recovery from others, we agree to waive of rights of recovery.  This waiver of rights applies only with respect to the above contract(s) and shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

Countersigned _____

          Authorized Representative

STF-CGL-1602 A CW (7/98)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 21 |

NAMED INSURED: Southwestern Equipment, LLC

---

### Additional Insured - Premises/Ongoing Operations

---

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

## Commercial General Liability Coverage Part

**Who is an Insured (Section II)** is amended to include as an insured any person or organization for whom you are performing operations when you are required by a specific written contract to add such person or organization as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability or any demand for "damages" arising out of premises or ongoing operations and caused by the negligent performance of "your work" for that insured. A person's or organization's status as an insured under this endorsement ends when your operations or "your work" for that insured are completed.

The insurance afforded the additional insured does not apply to liability or any demand for "damages";

    a.  arising out of the "products/completed operations hazard"; or
    b.  in the event of sole negligence of the additional insured.

The insurance provided by this endorsement is no broader than the insuring agreement of this policy and may not be the same terms as required by your contract.

Countersigned _____ *Janet Gordan-Foster* _____
                       Authorized Representative

STF-CGL-1645 C CW (3/02)





**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/05/03 | 22 |

NAMED INSURED: Southwestern Equipment, LLC

|  |
|---|
| Wrap-Up/Wrap-Around Exclusion |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

<u>**Schedule**</u>

1. Project Description:
   Project Number:
   Project Start & End Dates:
   Project Location/Address:
   Name of Developer:
   Insured's Revenue from this Project:
   Insurer, Policy Number, and Term:
   Limits(Occurrence and Aggregates):

2. Project Description:
   Project Number:
   Project Start & End Dates:
   Project Location/Address:
   Name of Developer:
   Insured's Revenue from this Project:
   Insurer, Policy Number, and Term:
   Limits(Occurrence and Aggregates):

If no entry is shown, no exceptions to this exclusion apply.

This policy does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of the Insured's participation, activities or operations as part of or arising out of any wrap-up, wrap-around or similar grouped-contractor insurance purchasing plan, except as specifically shown in the Schedule above.

Countersigned _____ *Janet Jordan Foster* _____
                         Authorized Representative

# THIS IMPORTANT DISCLOSURE NOTICE IS PART OF YOUR POLICY

We are making the following informational disclosures in compliance with The Terrorism Risk Insurance Act of 2002.  No action is required on your part.

### Disclosure of Terrorism Premium

The premium charge for risk of loss resulting from acts of terrorism (as defined in the Act) under this policy is $ 3,383.00 _____.  This amount is reflected in the total premium for this policy.

### Disclosure of Availablity of Coverage for Terrorism Losses

As required by the Terrorism Risk Insurance Act of 2002, we have made available to you coverage for losses resulting from acts of terrorism (as defined in the Act) with terms, amounts, and limitations that do not differ materially as those for losses arising from events other than acts of terrorism.

### Disclosure of Federal Share of Insurance Company's Terrorism Losses

The Terrorism Risk Insurance Act of 2002 establishes a mechanism by which the United States government will share in insurance company losses resulting from acts of terrorism (as defined in the Act) after an insurance company has paid losses in excess of an annual aggregate deductible.  For 2002, the insurance company deductible is 1% of direct earned premium in the prior year; for 2003, 7% of direct earned premium in the prior year; for 2004, 10% of direct earned premium in the prior year; and for 2005, 15% of direct earned premium in the prior year.  The federal share of an insurance company's losses above its deductible is 90%.  In the event the United States government participates in losses, the United States government may direct insurance companies to collect a terrorism surcharge from policyholders.  The Act does not currently provide for insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.

### Definition of Act of Terrorism

The Terrorism Risk Insurance Act defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

1.  to be an act of terrorism;
2.  to be a violent act or an act that is dangerous to human life, property or infrastructure;
3.  to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of title 49, United 17 States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4.  to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

But, no act shall be certified by the Secretary as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

These disclosures are informational only and do not modify your policy or affect your rights under the policy.

Copyright Zurich American Insurance Company 2002

STF-GU-630-A (11/02)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 09/24/03 | ENDORSEMENT NUMBER 23 |
|---|---|---|---|---|---|---|

**NAMED INSURED: Southwestern Equipment, LLC**

> **Additional Insured - Lessor of Leased Equipment (Designated)**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

#### SCHEDULE

Name of Person or Organization:
Osuna Equipment Rental, Dick & Brad Osuna 4650 Dulin Rd., #43 Fallbrook CA 92028-9351

Who Is An Insured (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person or organization, subject to the following additional exclusions:

This insurance does not apply:

1. To any "occurrence" which takes place after the equipment lease expires;

2. To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

Countersigned _____

Authorized Representative

STF-CGL-1632 A CW (7/98)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/03 | PRODUCER NUMBER 75409056 | DATE TYPED 12/18/03 | ENDORSEMENT NUMBER 24 |
|---|---|---|---|---|---|---|

NAMED INSURED: Southwestern Equipment, LLC

Amendment to Coverage

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is agreed that if, as to any "occurrence" or claim under this policy, coverage is also available under policy number **SCO 3747189-01**, the total liability of the company under both policies shall not exceed the largest limit of liability available under either policy.

Insured

Title

Date

All other terms and conditions remain unchanged.

Countersigned _____
                        Authorized Representative

STF-CGL-1499 A CW (7/98)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 01/04/04 | PRODUCER NUMBER 75409056 | DATE TYPED 01/28/04 | ENDORSEMENT NUMBER 25 |
|---|---|---|---|---|---|---|

**NAMED INSURED:** Southwestern Equipment, LLC

| Amendment to Coverage |
|---|

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is agreed that if, as to any "occurrence" or claim under this policy, coverage is also available under policy number **SCO 3747189-02,** the total liability of the company under both policies shall not exceed the largest limit of liability available under either policy.

_____
Insured

_____
Title

_____
Date

All other terms and conditions remain unchanged.

Countersigned _____
                              Authorized Representative

STF-CGL-1499 A CW (7/98)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/04 | 75409056 | 12/03/04 | 26 |

NAMED INSURED: Southwestern Equipment, LLC

| | |
|---|---|
| | **Amendment to Coverage** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is understood and agreed the final audit reflects the following amendments to this policy:

| Code | Classification | Exposure | Rate | Premium |
|---|---|---|---|---|
| 95410 | Grading of Land | 4,032,155 | 19.05 | 768,126 |
| | Uninsured Subcontractors | 1,895,603 | 28.57 | 541,574 |
| | 1% Terrorism Surcharge | | | 13,097 |

Audit Premium:             $1,322,797
Original Premium:          $  341,663
Additional Premium Due:    $  981,134

Surplus Lines Tax 3.0% 29,434.02
Stamping Fee 0.125% 1,226.42

All other terms and conditions remain unchanged.

Countersigned _____
                    Authorized Representative

55

STF-CGL-1499 A CW (7/98)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/04 | PRODUCER NUMBER 75409056 | DATE TYPED 12/03/04 | ENDORSEMENT NUMBER 27 |
|---|---|---|---|---|---|---|

NAMED INSURED: Southwestern Equipment, LLC

Amendment to Coverage

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

In consideration of a return premium of **$981,134.00,** it is understood and agreed Endorsement Number 26 is null and void.

Surplus Lines Tax 3.0% $29,434.02

Stamping Fee 0.125% $1,226.42

All other terms and conditions remain unchanged.

Countersigned _____

Authorized Representative

STF-CGL-1499 A CW (7/98)



## ZURICH

## Steadfast Insurance Company

| POLICY NUMBER SCO 3963957-01 | EFF. DATE OF POLICY 05/13/03 | EXP. DATE OF POLICY 05/13/04 | EFF. DATE OF ENDT. 05/13/04 | PRODUCER NUMBER 75409056 | DATE TYPED 12/03/04 | ENDORSEMENT NUMBER 28 |
|---|---|---|---|---|---|---|

**NAMED INSURED:** Southwestern Equipment, LLC

---

Amendment to Coverage

---

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

### Commercial General Liability Coverage Part

It is understood and agreed the final audit reflects the following amendments to this policy:

| Code | Classification | Exposure | Rate | Premium |
|---|---|---|---|---|
| 95410 | Grading of Land | 3,987,188 | 19.05 | 759,559 |
|  | Uninsured Subcontractors | 1,224,305 | 28.57 | 349,784 |
|  | 1% Terrorism Surcharge |  |  | 11,093 |

Audit Premium:           $1,120,436
Original Premium:        $ 341,663
Additional Premium Due:  $ 778,773

Surplus Lines Tax 3.0% 23,363.19
Stamping Fee 0.125%  973.47

All other terms and conditions remain unchanged.

Countersigned _____
                    Authorized Representative

57                    STF-CGL-1499 A CW (7/98)



## ZURICH

### Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/04 | 75409056 | 07/01/05 | 29 |

NAMED INSURED: Southwestern Equipment, LLC

| Amendment To Coverage |
|---|

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

In consideration of a return premium of $778,773.00, it is understood and agreed Endorsement Number 28, final audit, is null and void.

Surplus Lines Tax 3.0% ($23,363.19)
Stamping Fee 0.125% (973.47)

All other terms and conditions remain unchanged.

Countersigned _____

Authorized Representative

STF-CGL-1499 A CW (7/98)



**ZURICH**

## Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963957-01 | 05/13/03 | 05/13/04 | 05/13/04 | 75409056 | 07/01/05 | 30 |

NAMED INSURED: Southwestern Equipment, LLC

Amendment to Coverage

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

It is understood and agreed the final audit reflects the following amendments to this policy:

| Code | Classification | Exposure | Rate | Premium |
|---|---|---|---|---|
| 95410 | Grading of Land | 3,987,188 | 19.05 | 759,559 |
| | Uninsured Subcontractors | 1,224,305 | 25.00 | 306,076 |
| | 1% Terrorism Surcharge | | | 10,656 |

Audit Premium:            $1,076,291
Original Premium:         $ 341,663
Additional Premium Due:  $ 734,628

Surplus Lines Tax 3.0% __$22,038.84__
Stamping Fee 0.125% _____918.29__

All other terms and conditions remain unchanged.

Countersigned _____
            Authorized Representative

STF-CGL-1499 A CW (7/98)

# AUDIT INVOICE



**ZURICH**

| Customer | Agent |
|---|---|
| Southwestern Equipment LLC<br>5520 Wellesley Street<br>Suite 100<br>La Mesa, CA  91942 | Mike Myers<br>Colemont Insurance Brokers Inc<br>21550 Oxnard St Suite 950<br>Woodland Hills, CA 91367-7131 |

**Revised Invoice Date** 3/17/2008
**Due Date** Upon Receipt

| Policy Number | Effective Date | Description | Amount Due |
|---|---|---|---|
| SCO3963957-01 | 5/13/2003 | Premium Audit | $734,628.00 |
| | | Surplus Lines Taxes | $22,038.84 |
| | | Stamping Fees | $918.29 |
| | | Less Payment Received | ($426,463.00) |
| | | 9/18/06 Payment Received check # 22667 | ($18,929.25) |
| | | **TOTAL AMOUNT DUE** | **$312,192.88** |

| Remit Payment to: | Refer Questions To: |
|---|---|
| Zurich North America<br>8745 Paysphere Circle<br>CHICAGO, IL  60674-8745 | Sherry Totzke<br>1400 American Lane<br>Schaumburg, IL  60196<br>PHONE: (847) 240-4492<br>FAX: (847) 240-8050 |

EXHIBIT 

60

**EXHIBIT C**



**ZURICH**

### Steadfast Insurance Company

| POLICY NUMBER | EFF. DATE OF POLICY | EXP. DATE OF POLICY | EFF. DATE OF ENDT. | PRODUCER NUMBER | DATE TYPED | ENDORSEMENT NUMBER |
|---|---|---|---|---|---|---|
| SCO 3963857-01 | 05/13/03 | 05/13/04 | 05/13/03 | 75409056 | 08/15/03 | 8 |

NAMED INSURED: Southwestern Equipment, LLC

Subcontractors Maintenance of Liability Limits

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the:

Commercial General Liability Coverage Part

### SCHEDULE

Designated
Subcontractors:
The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any provisions elsewhere in the policy shall control the application of insurance to which this endorsement applies.

1. You will require that all subcontractors shown in the Schedule of Designated Subcontractors, while performing operations for during the period of their contract with you will:

   a. Maintain Commercial General Liability insurance coverage provided by:

      [X] an insurance company with an "A" Best rating or better, or
      [ ] the following insurance company:

   b. Provide minimum limits as respects Coverage A. Bodily injury or Property damage of
      $ 1,000,000    Each Occurrence. $ 1,000,000    General Aggregate, $ 1,000,000
      Products-Completed Operations Aggregate;
      (For any blasting contractor, limits of $              Each Occurrence, $
      General Aggregate, $              Products-Completed Operations Aggregate);

   c. Have you added to their policies as an Additional Insured in accordance with a. and b. above;

   d. Provide you with Certificates of Insurance showing the coverage requirements indicated in a., b., and c. above.

Countersigned _____ *Janet Jordan Foster* _____
                    Authorized Representative                    STP-CGL-1495 A CW (3/93)
                                                                  page 1 of 2

EXHIBIT C

61

HEATH INS BROKERS                → HEATH SOLVANG      ☒ 005/005

08/25                                                    T-079   P.05/05   F-364

AUG-25-03  09:29    FROM

2.  Your failure to comply with the conditions above will not alter the coverage provided by this policy. However, should you fail to comply, we will consider such independent subcontractors to be your employees for the purpose of computing rate and premium and such premium will be charge at a rate of:

$ 28.57          per $100          of contract cost

3.  Commercial General Liability Insurance maintained by your subcontractors, within which you are an Additional Insured, will be considered primary insurance and our policy will be considered excess of the limits of insurance of that subcontractor's primary coverage, notwithstanding any contrary language that may exist in any Other Insurance condition of the policy.

4.  All other terms and conditions of the policy not affected by this endorsement remain the same.

Southwestern Equip

Gina Bennett
_____
Insured

Gina Bennett
_____
By

Controller
_____
Title

8-12-03
_____
Date

STP-CGL-1625 A CW (7/97)
page 2 of 2

62

JS 44 (Rev. 12/07)

# ORIGINAL

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| STEADFAST INSURANCE COMPANY, a Delaware corporation | SOUTHWESTERN EQUIPMENT, LLC, a California limited liability company |

(b) County of Residence of First Listed Plaintiff **State of Delaware**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **San Diego County**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

DEPUTY

(c) Attorney's (Firm Name, Address, and Telephone Number)

Larry M. Golub (110545), BARGER & WOLEN LLP
633 W. Fifth St., 47th Fl., Los Angeles, CA 90071, (213) 680-2800

Attorneys (If Known)

**'08 CV 0959 JAH LSP**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Diversity Jurisdiction - 28 U.S.C. sec. 1332

Brief description of cause:
Breach of Contract, Account Stated and Money Had and Received.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 312,192.88

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                    DOCKET NUMBER

DATE
05/30/2008

SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # 151378    AMOUNT 350.—    APPLYING IFP    JUDGE    MAG. JUDGE

5/30/08

# UNITED STATES
# DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

# # 151378 — SR

## May 30, 2008
## 10:36:37

## Civ Fil Non-Pris

USAO #.: 08CV0959 CIV. FIL.
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC#90454

## Total—> $350.00

FROM: STEADFAST INS. CO. V .
      SOUTHWESTERN EQUIP.
      CIV. FIL.